[No. 10521. Department Two. November 22, 1912.]

F. W. RONKOSKY, *Appellant*, v. THE CITY OF TACOMA, *Respondent.*

JOHN HANNAM, *Appellant*, v. THE CITY OF TACOMA, *Respondent.*[1]

MUNICIPAL CORPORATIONS—STREAMS—OBSTRUCTION—DEFECTIVE CULVERTS—LIABILITY OF CITY. Where a fill and culvert is constructed across a natural water course, the city must make adequate provisions to care for the water of the stream, including ordinary freshets that could reasonably be anticipated, and is liable for damages to property where, after notice that the culvert had become inadequate through decay or obstructions, it failed to remedy the defect.

SAME—SURFACE WATERS—DRAINS—DUTY OF CITY. A city having constructed an adequate culvert to drain off surface water, must exercise reasonable care to maintain the same in a suitable condition to perform its function.

SAME—STREAMS — OBSTRUCTION — ACTION FOR DAMAGES — NEGLIGENCE—QUESTION FOR JURY. Where a city culvert became clogged up, obstructing a natural stream until buildings were floated in forty-five feet of water, allowing the water to go out with a rush when the city cut away a cribbing, demolishing the buildings, whether the city was negligent in causing the water to go out with unnecessary suddeness, and the damages suffered thereby, are questions for the jury.

Appeals from judgments of the superior court for Pierce county, Clifford, J., entered December 13, 1911, dismissing actions for injury to property, upon granting nonsuits. Reversed.

[1] Reported in 128 Pac. 2.

*Frank S. Carroll,* for appellants.

*T. L. Stiles, F. R. Baker,* and *Frank M. Carnahan,* for respondent.

ELLIS, J.—These two actions were, by stipulation of the parties, tried together. A motion for nonsuit was sustained as to each case; and from that order and judgments of dismissal thereon, the plaintiffs in both cases have appealed. By further stipulation, both cases are here for consideration upon the same statement of facts.

Where Steele street and North 29th street, in the city of Tacoma, intersect, there is a deep gulch, in the bottom of which flows a perennial stream, carrying a small amount of water in the summer time, but a much larger volume in the rainy season. Years ago, the city graded 29th street across the gulch by cribbing and filling it to a height of forty-five feet above the bottom of the gulch. A culvert was constructed beneath the fill sufficient to permit the passage of the waters of the creek, so far as the evidence shows, at all seasons. The appellant Hannam was the owner of a small dwelling house, barn, and woodshed, situated in the gulch a short distance above or up the stream from the fill. These buildings were constructed subsequently to the filling of the street. The appellant Ronkosky, as Hannam's tenant, occupied the premises at the time here in question. The evidence shows that, during recent years, the culvert, either by reason of decay or by its becoming partially obstructed, had ceased to carry the water as effectively as at first, so that at times of heavy rains the water would back up in the gulch to some extent, but not sufficiently to flood the buildings or cause damage. There was evidence from which it might reasonably be inferred that the culvert was in a state of decay, since witnesses testified that, several times during the three or four years immediately preceding the catastrophe, the fill above the culvert had sunken so as to necessitate filling with brush and sand in order to restore the grade of the street.

It further appears that the city had been notified that the culvert was becoming clogged, and that, some time before the catastrophe, there had been some talk of constructing a tunnel beneath the fill.

About November 20, 1910, there occurred a very copious rainfall, and the water began to accumulate in the gulch above the fill. The appellant Ronkosky set a stake and observed it for a time, but seems to have concluded that it would not rise to a sufficient height to flood the house. He and his family went to bed and, near midnight, were awakened by the noise of water about the house. He had barely time to escape with his wife and children before it was completely flooded. No part of his household goods was rescued, save the stove. By morning the buildings were all washed from their foundations and floating about in a lake of water forty-five feet deep. This condition continued for a week, when the city, in an effort to drain the pond, cut the cribbing at the lower side of the fill. The structure gave way, and the water went through with a rush, carrying the buildings with it and wrecking them. Ronkosky lost his tools, chickens, winter fire wood, family clothing, and household goods; Hannam, his buildings. Ronkosky had paid his rent for some four months in advance. He sued for this loss and the value of his property; Hannam, for the loss of his buildings. The negligence charged in each case was that the respondent city permitted the culvert to become clogged, thus causing the accumulation of water, and afterwards cut away the cribbing, causing the fill to give way; thus completely destroying the buildings and washing away the household goods, tools, and wood.

The respondent contends that these actions were properly dismissed under the "common enemy" doctrine of the common law as applied to surface water. It is urged that the decisions of this court, in *Cass v. Dicks*, 14 Wash. 75, 44 Pac. 113, 53 Am. St. 859; *Harvey v. Northern Pac. R. Co.*, 63 Wash. 669, 116 Pac. 464, and *Wood v. Tacoma*, 66 Wash.

266, 119 Pac. 859, are determinative of the issue; and that, as a matter of law, the city was under no obligation to furnish drainage for surface water. For two good reasons the doctrine announced in those decisions has no application to the facts here presented.

(1) In the first place, when water, from whatever source, is collected into a natural stream or watercourse, where the drainage of the surrounding country has been accustomed immemorially to flow, it is no longer an outlaw or common enemy. Such a stream must be recognized as a permanent physical condition, with which no one may with impunity interfere to the detriment of another.

"And here it is important to distinguish between natural streams flowing in channels between defined and actual banks, and surface-water, caused by rain or melting snow; for the law relating to them is essentially different, and the powers of the municipality much greater with respect to the latter than the former. Assuming the stream to be of the former character, and that the municipality is without any valid legislative powers changing what would otherwise be the legal rights of the parties, its authorities under the general power to grade and improve streets, or construct public improvements beneficial to it, cannot deprive others of their legal rights in respect of the water-course, or injure the property of others by badly constructed and insufficient culverts or passageways obstructing the free flow of the water, without being liable therefor." 4 Dillon, Municipal Corporations (5th ed.), § 1731.

"In considering the liability of municipal corporations for injuries to private property in consequence of being overflowed with water caused by improvements made or work done upon streets under their authority, it is important to distinguish between natural streams flowing in channels between defined and actual banks, and surface water caused by rain or melting snow, for the law relating to them is very different, and the powers of the municipality much greater with respect to the latter than the former. Assuming the stream to be of the former character (a natural stream flowing in a channel between defined and actual banks as Righter Branch seems to have been), and that the municipality is

without any legislative powers, changing what would other-
wise be the legal rights of the parties, its authorities under
the general power to grade and improve streets, or construct
public improvements beneficial to it, cannot deprive others
of their rights in the water course, or injure them by badly
constructed and insufficient culverts or passage ways, ob-
structing the free flow of the water without being liable there-
for. Dill. on Mun. Corp., sec. 797 and cases cited. The rule
is different as to surface water. Id., 798; *City of Little Rock
v. Willis,* 27 Ark. 572." *Mayor etc. of Helena v. Thompson,*
29 Ark. 569, 574.

"And a contrary doctrine allowing towns to dam up and
obstruct running streams by their highways, to the great
injury, and perhaps absolute ruin of the adjoining owners,
without compensation or liability, would be too monstrously
unjust to be tolerated for a moment, and the unvarying prac-
tice and usage on the subject since the state was settled,
show how the law has always been understood." *Haynes v.
Burlington,* 38 Vt. 350, 360.

"A liability will also follow where a natural water course
has been negligently obstructed or destroyed. . . . . .
The rule stated in the first of this paragraph equally applies
to obstructing natural water courses by bridges or culverts."
3 Abbott, Municipal Corporations, pp. 2263, 2264.

See, also, *Mootry v. Town of Danbury,* 45 Conn. 550, 29
Am. Rep. 703; *Ross v. Madison,* 1 Ind. 281, 48 Am. Dec. 361.

Where a street is improved across such natural water
course, it is incumbent upon the municipality not only to
make an adequate bridge culvert, or passage for the water
in the first instance, but to keep it in such condition that
it shall not obstruct the stream thereafter. *Haynes v.
Burlington, supra; Perry v. Worcester,* 6 Gray 544, 66 Am.
Dec. 431; *Rowe v. Granite Bridge Corp.,* 21 Pick. 344;
*Lawrence v. Inhabitants of Fairhaven,* 5 Gray 110-116.

Nor is this positive duty met by a provision merely ade-
quate to take care of the water of the stream, at its lowest
or even at its ordinary stages. Proper regard must be had
to the volume of water, the strength and rapidity of the cur-
rent at all seasons. While there is no liability for failure

to provide against unprecedented floods, ordinary freshets must be anticipated and provided for. *Perry v. Worcester, supra; Sprague v. Worcester*, 13 Gray 193; *Rochester White Lead Co. v. Rochester*, 3 N. Y. 463, 53 Am. Dec. 316; *Dallas v. Schultz* (Tex. Civ. App.), 27 S. W. 292.

The evidence showed, and it seems to have been admitted, that the stream obstructed was a natural water course. While the rain was admittedly heavy, there was no evidence that it was unprecedented, or that it was such as should not have been reasonably anticipated in this climate. Though the appellant Hannam built his house, and the appellant Ronkosky moved into it, long after the fill and culvert were constructed, there was no evidence that the culvert was not adequate when constructed, nor when the house was built, to carry off all the water reasonably to be anticipated. There was, however, ample evidence from which a jury might have found that the city had notice of the supervening inadequacy of the culvert by reason of decay or obstruction, and wholly failed to remedy the defect. All of these were questions for the jury, and should have been submitted to it upon instructions embodying the foregoing principles of law.

(2) In the second place, the city, while under no primary obligation to furnish drainage for surface water, even if this stream could be considered surface water, had a discretionary power so to do. Having constructed this drain and undertaken the performance of this discretionary duty, the obligation to maintain the drain in a safe and suitable condition was no longer a matter of mere discretion. Though the city would not be liable for errors of judgment in adopting an inadequate plan or system of drainage, having once adopted an efficient plan and constructed an adequate drain, there arose the positive duty to exercise reasonable care to maintain its original efficiency.

"After the construction of drains and sewers, although originally this was a discretionary duty, yet, the obligation to maintain them in a safe and suitable condition is not one

of that character and the authorities must perform their duty in these respects or become liable for any injuries suffered. A municipal corporation cannot in respect to the construction or maintenance of a drainage or sewage system, especially in its discharge, create either a public or private nuisance. For the former, it is subject to indictment, in some jurisdictions, and for the latter, it will be liable for damages shown." 3 Abbott, Municipal Corporations, pp. 2233, 2234, 2235.

See, also, *Denver v. Capelli*, 4 Colo. 25, 34 Am. Rep. 62; *City of Valparaiso v. Cartwright*, 8 Ind. App. 429, 35 N. E. 1051; *Louisville v. O'Malley*, 21 Ky. Law 873, 53 S. W. 287; *Mayor etc. of Brunswick v. Tucker*, 103 Ga. 233, 29 S. E. 701, 68 Am. St. 92.

In *Wood v. Tacoma, supra,* the case chiefly relied upon by the respondent, the city had never provided nor undertaken to provide any permanent system of drainage, nor was any natural stream or water course obstructed. The distinction from the case in hand is too obvious to require further comment.

As to the further claim of damage caused by the giving way of the fill, it seems to us that it was a consequence of the primary act of negligence in allowing the culvert to become clogged. In any event, whether the city was negligent in cutting away the cribbing, and whether that caused the water to go out with unnecessary suddenness and violence, and whether the appellants thereby suffered damages which proper care upon the respondent's part might have avoided, were all questions for the jury.

The judgments are reversed, and the causes remanded for further proceedings.

MOUNT, C. J., FULLERTON, MAIN, and MORRIS, JJ., concur.