[No. 37366. Department One. March 3, 1966.]

RAYONIER, INCORPORATED, *Respondent,* v. CHICAGO, MIL-
WAUKEE, ST. PAUL & PACIFIC RAILROAD
COMPANY, *Appellant.**

*B. E. Lutterman, Warren H. Ploeger,* and *James E. Nelson,*
for appellant.

*Guttormsen, Scholfield, Willits & Ager,* for respondent.

LANGENBACH, J.†—This is an action to recover costs and
expenses incurred in replacing a pipeline.

Respondent (plaintiff) is contractually obligated to sup-
ply water to the City of Port Angeles. As part of that
contract, respondent agrees to maintain a pipeline, 158 feet
of which was destroyed on January 15, 1961. Due to clog-
ging of a culvert in an upstream fill, waters of Dry Creek

*Reported in 411 P.2d 864.

†Judge Langenbach is serving as a judge pro tempore of the Supreme
Court pursuant to Art. 4 § 2(a) (amendment 38), state constitution.

were impounded to such an extent the fill gave way. The force thus created destroyed the 158 feet of pipeline which was located approximately ¾ to 1 mile downstream.

Dry Creek is a shallow, nonnavigable stream in Clallam County, Washington. In 1913, a predecessor in interest, having condemned a right-of-way, built an earthen fill across Dry Creek. The fill was 172 feet wide at the base, 19.9 feet wide at the top, 50 feet high, and approximately 130 feet from bank to bank. At its base was a wooden culvert, 4 by 5 feet, 173 feet long, providing 25 square feet for passage of water.

In 1918, appellant acquired title to the right-of-way with the fill and culvert. In 1931, appellant replaced the rotted wooden culvert with one of steel reinforced concrete, 48 inches in diameter, 162 feet long, providing 12.55 square feet for the passage of water. The new culvert was installed at a sharp angle to the course of the stream, producing erosion.

The railroad line was abandoned in 1951. In 1954, appellant took up the rails and discontinued maintenance of the fill. On July 10, 1957, appellant deeded the right-of-way with fill and culvert to one Edwards who, on September 17, 1957, deeded it to Dalgardos, the present owners. Since July 10, 1957, appellant has had no right, title or interest in the fill and culvert.

In 1949, the culvert clogged and water impounded to the height of 47 feet, or within 3 feet of the top of the fill. At all other times the culvert adequately handled the waters of Dry Creek, with regular inspections by a maintenance crew. In 1951, an assistant engineer of appellant made a drainage survey to determine the adequacy of the culvert in question. He recommended an additional culvert with a trash rack. This report was tentatively approved, but was never fulfilled.

A culvert located upstream is 65 square feet and, at another location, a span is used to traverse Dry Creek.

The watershed area is approximately 3,650 acres. Immediately upstream of the culvert, the land slopes, but it

progressively flattens downstream. The soil upstream is principally bedrock (sandstones and siltstones), while the soil in the area of the fill is glacial drift. The area is primarily covered with a 50-year stand of timber, which is good for pulpwood. Approximately 1,300 acres are cleared; some are used for pasture and others are under cultivation. The farmers in the area have continually cleared the land. In 1958, the Dalgardos clear-cut (cut all the trees) 2 acres above the fill. There are minor pulpwood mill operations.

The Dalgardos live within 500 feet of the washed-out fill and culvert. They have used the fill to traverse Dry Creek, and Mrs. Dalgardo managed to walk through the culvert.

During the 24 hours immediately preceding January 15, 1961, 2.8 inches of rain fell. (From 1945 to 1956, there were eight occasions when the rainfall was even higher than that amount.) During this rain, one-third to one-half of the 200 culverts owned and maintained by the county were plugged; a culvert and a bridge abutment were washed out, and maintenance crews worked through the night.

On a motion for summary judgment, the trial court first ruled that the action should be dismissed because, based on negligence, it was barred by the statute of limitations. On a motion for reconsideration, the court held that there was a question of fact based upon an allegation of nuisance. The trial then proceeded upon this single issue of fact.

The court held that when the appellant conveyed the fill and culvert as part of a right-of-way to one Edwards, it in effect sold him a nuisance. It reasoned that the appellant, being fully aware of the nature of terrain, the cutting of trees above the fill as a continuing activity, and the culvert as situated in the curve, should have installed a trash rack before it conveyed the fill and culvert to individuals who could not reasonably be expected to maintain the culvert to a degree and extent that the culvert would be adequate.

The question is whether the appellant created a nuisance by conveying the fill and culvert to individuals. This court thinks not.

[T]he closing of the channel of any stream . . . or an obstruction to the free use of property, so as to essen-

> tially interfere with the comfortable enjoyment of the . . . property, is a nuisance and the subject of an action for damages and other . . . relief. RCW 7.48-.010.
>
> Nuisance consists in unlawfully doing . . . or omitting to perform . . . [an act], which . . . obstructs . . . any . . . stream . . . or in any way renders other persons insecure . . . in the use of property. RCW 7.48.120.

Respondent's argument is that the culvert was so negligently constructed that the maintenance required to make it adequate was of such a degree as to be an unreasonable burden on subsequent grantees.

The fill and culvert may not have been constructed according to good engineering practice; in that sense, negligently constructed. The culvert was at a sharp angle to the flow of Dry Creek and was relatively small. Good engineering practice generally requires downstream culverts to be larger, since water volume increases through successive culverts. Here, an upstream culvert is 65 square feet and a span is used at another location, as compared with the 12.55 square feet of the washed-out culvert. Good engineering practice also requires consideration of such factors as the size of the watershed area, the annual rainfall, the nature of the soil, the slope of the land, and the possibility of debris. Here, the watershed area was approximately 3,650 acres, the upstream soil is hard, the upstream land is sloping and the activity of cutting trees was a continuing one. From this, testimony was introduced that the culvert was inadequate. Appellant's assistant engineer's recommending an additional culvert with a trash rack is also an indication of inadequacy.

Respondent, in arguing that this negligence constitutes nuisance, relies on *Peterson v. King Cy.*, 45 Wn.2d 860, 278 P.2d 774 (1954). In that case, the county built a road and installed a drainage system. Thereafter, a bulkhead was built directly above plaintiff's property. When pilings supporting the bulkhead rotted, new ones were installed without removing the rotted ones. A heavy rain occurred, the

drainage system failed, and a slide resulted. The plaintiff alleged that defendant failed "to repair or replace the said bulkhead in order to stop the flow of water, rocks and debris; . . . thus leaving plaintiffs exposed to further damage and constant danger through slides, rolling rocks, and excess drainage." The defendant argued that this allegation was not of nuisance, but only negligence. The court disagreed, saying, at 862:

> The fallacy . . . is the failure to recognize that the alleged existence of a nuisance refers to the interests invaded, and not to any particular kind of conduct which has led to the invasion.
>
> . . . .
>
> A complaint states a cause of action, on the theory of nuisance, when it alleges tortious conduct . . . which *substantially* invades the interest of the complainant in the use and enjoyment of his land. (Italics ours.)

Generally, an inadequately constructed fill and culvert across a natural water course, or a failure to adequately maintain the fill and culvert, is negligence. *Ronkosky v. Tacoma,* 71 Wash. 148, 128 Pac. 2 (1912).

■ Assuming, without deciding, that the culvert in question was negligently constructed, the fallacy of respondent's argument is that its interest in the use of the pipeline was not substantially invaded when appellant owned the fill and culvert. From the construction of the culvert (1931) until appellant's conveyance of it (1957), respondent's interest in the use of the pipeline was threatened at only one time, in 1949, when the waters of Dry Creek impounded 47 feet behind the 50-foot-high fill. There was no evidence indicating that the culvert ever became clogged, save the 1949 incident. On the contrary, the culvert always appeared adequate to handle the waters of Dry Creek. All of the witnesses (especially those who lived in the vicinity), with the sole exception of respondent's expert witness, testified that the culvert was adequate at all times. Additionally, from 1945 to 1956, there were eight occasions when the rainfall was higher than the 2.8 inches which fell in the 24-hour period preceding the washout.

Next, respondent argues that the culvert was adequate only because of the regular inspection and maintenance by appellant, and that the required inspection and maintenance were of such a degree as to impose an unreasonable burden on subsequent grantees unless a trash rack was installed. The trial court thought a trash rack was necessary because of the nature of the terrain and cutting of trees above the fill. Perhaps good engineering practice would have required a trash rack to be installed, but this does not mean a failure to do so created a nuisance. The cutting of the trees in the upstream area has been a continuing activity through the years, and the culvert, prior to the washout, proved adequate. Appellant's regularity of inspection and maintenance, however, was undoubtedly a contributing factor, but it was not of such a degree as to impose an unreasonable burden on the Dalgardos. They lived within 500 feet of the fill and culvert. They used the fill to traverse Dry Creek. Mrs. Dalgardo had somehow walked through the culvert. Moreover, any prudent person knows that debris will clog a culvert, resulting in impounded water. As stated, the fill and culvert in question were not the only washouts that night. The county lost a culvert and a bridge abutment, and county maintenance crews worked through the night to unplug one-third to one-half of the culverts owned by the county.

Since appellant has had no interest or control over the fill and culvert in question for $3\frac{1}{2}$ years, any liability for negligence is barred by the statute of limitations.

The judgment is reversed and the action dismissed. It is so ordered.

ROSELLINI, C. J., HILL, OTT, and HALE, JJ., concur.