[No. 38335.    Department One.    November 2, 1967.]

TONY COLELLA, *Respondent and Cross-appellant*, v. KING COUNTY, *Appellant.**

*Reported in 433 P.2d 154.

*Charles O. Carroll, James E. Kennedy,* and *William L. Paul, Jr.,* for appellant.

*Michael R. Donovan,* for respondent and cross-appellant.

WEAVER, J.—Defendant, King County, appeals from a judgment entered against it April 13, 1965.

The judgment (1) grants plaintiff $4,500 "for damages incurred by plaintiff by the *temporary constitutional taking* or damaging of plaintiff's property" (italics ours); (2) enjoins King County from diverting certain water onto plaintiff's property; (3) directs the county to clean certain culverts and to remove others (as to (2) and (3), the power of the court to order the county to do this is not questioned on this appeal; we do not consider the problem); and (4) grants to plaintiff "$50.00 per day after September 1, 1965 continuing damages if defendant fails to comply herein."

Plaintiff cross-appeals from that portion of the judgment that allows him only $4,500 damages.

The method chosen by the county to present its appellate assignments of error has made our consideration of this appeal difficult. The county's assignments of error are:

1. The trial court [erred] *in determining* that the Thompson Road ditch contributed a relatively substantial amount of water to plaintiff's land for the reason that the road ditch water was intermittent and no weight at all was given to plaintiff's and adjoining land owner's surface water of extremely large quantity.

2. The trial court erred *in determining* that once a drainage system is installed, as the flume and culverts 40 years ago, the County must keep them in repair; for the reason that such flume and culverts serve to drain private water as well as public waters; and King County had no authority to drain private waters from a spring or from the surface.

3. The trial court erred *in finding* any damages due plaintiff because this is inconsistent with the trial court's determination that plaintiff was holding the land for speculation, King County having already on March 29, 1965 commenced the legal process of establishing a drainage district.

4. The trial court erred *in awarding* future damages of $50 daily after September 1, 1965 because there was no showing as to future damage, and the amount is speculative and the court has no power to award future damages. (Italics ours.)

■ "In determining," "in finding," and "in awarding" fall far short of meeting the requirements of Rules on Appeal 42(g)(1)(iii) and 43, RCW vol. 0, by which a finding of the trial court may be questioned on appeal. The phrases are only invitations to us to read the record and second-guess the trial court. This we cannot do. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959), and the plethora of cases that have cited it.

Failure of the county to comply with the cited Rules on Appeal requires us to accept the trial court's findings of fact as verities and as the established facts of the case.[1] *Pier 67, Inc. v. King Cy.*, 71 Wn.2d 92, 426 P.2d 610 (1967); *Caffrey v. Chem-ionics Corp.*, 69 Wn.2d 641, 644, 419 P.2d 809 (1966); *Bignold v. King Cy.*, 65 Wn.2d 817, 399 P.2d 611 (1965). The county's first assignment of error presents nothing for our consideration.

Plaintiff and his family have owned 4-acre tract 8 and 5-acre tract 19 of Moore's Five Acre Tracts, King County, for more than 30 years. They were farmed by plaintiff's father. The tracts are separated by Burns Street (formerly Roxbury Street), which extends east and west. Tract 8 is to the north; tract 19 to the south. The property is presently zoned M-1, unlimited, which permits its use for manufacturing or related purposes.

Many years ago, King County installed a drainage ditch on the north side of Burns Street. Several culverts under Burns Street carried surface water to the drainage ditch from tract 19. The ditch drains naturally in an easterly direction and eventually flows to the Duwamish waterway. Defendant county has failed to keep either the culverts or the drainage ditch clear of debris.

---

[1]This is dispositive of plaintiff's previous motion to dismiss appeal, which motion was "passed to the merits."

Tract 19 lies south of Burns Street. Thompson Road, south of tract 19 but not contiguous to it, also extends generally east to west.

It is not necessary to detail the drainage system on Thompson Road previous to 1959; but we find it highly significant that the trial court found that

prior to 1959 none of the surface waters from Thompson Road reached plaintiff's property.

For many years, the water of a spring to the south of tract 19 flowed north in a ravine. The small stream thus created was dammed by plaintiff's father and the water used for domestic purposes and for cleaning produce grown on the land. Overflow from the dam was carried northerly by pipes on plaintiff's westerly property line to join a small creek flowing from the west. The water then flowed northerly through an 18-inch culvert installed under Burns Street by defendant; thence, it flowed easterly into Duwamish waterway.

About 1959, defendant county changed the drainage system of Thompson Road. It removed a culvert; purchased an easement from the Seattle Land Company, which owned the property between Thompson Road and plaintiff's tract 19; and installed a 75-foot, 18-inch culvert in the easement area. The new system diverted the Thompson Road surface water to the ravine already described.

The trial court found that this

dumped into the ravine a very substantial amount of surface water which resulted in washing out the small dam belonging to the plaintiff, inundated the property of the plaintiff causing the small creek bed to overflow and resulted in flooding of [the] property of the plaintiff. (Finding of Fact 6.)

This caused the Burns Street culverts and drainage ditch to be filled with dirt and debris so that water backed up and overflowed plaintiff's property.

[A]s a result, the property of the plaintiff is marshy and swampy and cannot be used, in large part, for either agricultural or industrial uses and this condition continues to [the] present time. (Finding of Fact 6.)

The trial court further found that defendant's action "is rendering plaintiff's property substantially unfit for use to the damage of plaintiff."[2]

Thus, it appears that the county's act of casting the surface waters from Thompson Road into the ravine and then onto plaintiff's land, and its failure to keep clear its culverts under and its drainage ditch north of Burns Street have caused plaintiff's property to be in its present unusable condition.

We give the broadest possible interpretation to the county's second assignment of error; we *assume* that it is directed to conclusion of law No. 3 (for it is not so designated), which states:

That the defendant, King County, is under a duty not to dump surface waters onto the property of the plaintiff and is under a duty to maintain its culverts and ditch on Burns Road and not to cause the flooding of the property of plaintiff.

We find there is no merit to either of the two facets of the county's attack upon this conclusion of law.

■ Surface waters may not be artificially collected and discharged upon adjoining lands in quantities greater than or in a manner different from the natural flow thereof. *King Cy. v. Boeing Co.*, 62 Wn.2d 545, 550-51, 384 P.2d 122 (1963), and authorities cited. The county breached this duty when it transferred the surface water of Thompson Road across the acquired easement by culvert and into the ravine; thence, to plaintiff's property.

■ As to the second facet—the duty of the county to maintain its culverts and its ditch on the north side of Burns Street—we find the question answered many years ago in *Ronkosky v. Tacoma*, 71 Wash. 148, 128 Pac. 2 (1912). The court said:

Where a street is improved across such natural water course, it is incumbent upon the municipality not only to

_____

[2]The trial judge said in his oral opinion that "this condition that I have described has rendered the plaintiff's property useless for anything but duck hunting, and I presume there is a county ordinance against that."

make an adequate bridge culvert, or passage for the water in the first instance, but to keep it in such condition that it shall not obstruct the stream thereafter. (Citing authorities.)

Later, the court stated:

In the second place, the city, while under no primary obligation to furnish drainage for surface water, even if this stream could be considered surface water, had a discretionary power so to do. Having constructed this drain and undertaken the performance of this discretionary duty, the obligation to maintain the drain in a safe and suitable condition was no longer a matter of mere discretion. . . . *there arose the positive duty to exercise reasonable care to maintain its original efficiency.* (Italics ours.)

There are two short answers to the county's third assignment that it was error to allow plaintiff any damages because "this is inconsistent with the trial court's determination that plaintiff was holding the land for speculation." First, there is nothing in the findings of fact to indicate the court found that plaintiff was "holding the land for speculation"; and second, if there were, it would be a non sequitur.

Finally, the county's fourth assignment of error is directed to the trial court's finding that "After September 1st, 1965 plaintiff's lands will suffer damage of $50.00 per day." We have previously pointed out that there is no attempt upon the part of the county to abide by the Rules on Appeal. This would be sufficient for us to disregard this assignment of error were it not for plaintiff's cross-appeal.

Plaintiff's cross-appeal requires that we note a number of related matters.

Although the trial court found that plaintiff's property had been damaged by the county, there is not a direct finding of fact stating whether the damage is temporary or permanent. We assume for the purpose of this opinion, however, that the court considered the damage temporary for the *judgment* enjoins the county from diverting water from Thompson Road upon plaintiff's property; directs the

county to remove the culvert it had installed from Thompson Road to the ravine; directs the county to fill the ditch that will result from the removal of the culvert; and directs the county to clean the culverts under Burns Street and to clean the ditch on the north side of Burns Street. This certainly indicates that the court considered the damage to be repairable. On the other hand, the judgment, quoted *supra,* states that there has been a *"temporary constitutional taking* or damaging of plaintiff's property." (Italics ours.) "Temporary constitutional taking" is an ambiguous phrase. If there has been a "constitutional taking," it implies that the owner has lost his property. If the "taking" is "temporary," as the trial court indicated in the judgment, it implies that the "taking" can be eliminated by repairing the damage and removing its cause.

The damage done by the county may be repairable, but the plaintiff cannot go upon county property and do that which the county has been ordered to do by the court. Plaintiff cannot trespass upon county property or property of others in order to correct the damage that the county has caused. An allowance of damages to plaintiff in an amount necessary to correct the county's wrong does not give a practical remedy to plaintiff. He is still left with unusable property of doubtful value.

Nothing in the findings of fact establishes the value of plaintiff's property at the time the county breached its duty. In the conclusions of law, however, the court stated:

> That the value of the land of plaintiff at the time the actions of the defendant caused damages to the same was of the value of ONE HUNDRED FOURTEEN THOUSAND ($114,000.00) DOLLARS, BUT That the sum of FOUR THOUSAND FIVE HUNDRED ($4,500.00) DOLLARS, is a sufficient amount to be paid by the defendant to the plaintiff because of the acts of the defendant which resulted in the flooding of the said described real property.[3]

In truth, this is a finding of fact and not a conclusion of law.

---

[3]Plaintiff's expert witnesses fixed the value at $117,000; defendant's at $114,000.

*Harkoff v. Whatcom Cy.,* 40 Wn.2d 147, 241 P.2d 932 (1952) (a case similar to the instant one), defines the county's duty:

> When the appellant constructed and subsequently made improvements to its road system, it necessarily changed the course of the natural drainage of surface water. It had the right to construct and at times enlarge roadside drainage ditches to protect the roads and to put needed culverts under them. In so doing, however, it was its duty to construct them of sufficient capacity to carry the drainage waters impounded thereby and in such a manner as not to overflow onto the property of others.

██ Further, the case sets forth definitely the measure of damages for breach of that duty:

> In determining what is the applicable rule for measuring damages in cases like the one before us, one of the first questions is whether the damage to the property is permanent, or whether the property may be restored to its original condition. If the injury is permanent, the general rule applicable is the difference between the market value of the property immediately before the damage and its market value immediately thereafter. If, however, the property may be restored to its original condition the measure of damages is the reasonable expense of such restoration, and in a proper case the loss of use or of income therefrom for a reasonable time pending such restoration. *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504; *Messenger v. Frye,* 176 Wash. 291, 28 P. (2d) 1023; *Armstrong v. Seattle,* 180 Wash. 39, 38 P. (2d) 377, 97 A.L.R. 826; *Ghione v. State,* 26 Wn. (2d) 635, 175 P. (2d) 955; 3 Sedgwick on Damages (9th ed.) 1916, § 932.

Other cases adopting the same rule are set forth in the margin.[4]

The first question is presented by *Harkoff, supra:* Is the damage permanent or may the property be restored to its original condition? The findings and judgment indicate that the damage is repairable and temporary; yet the re-

---

[4]*Papac v. Montesano,* 49 Wn.2d 484, 303 P.2d 654 (1956); *Anderson v. Port of Seattle,* 49 Wn.2d 528, 304 P.2d 705 (1956); *Ackerman v. Port of Seattle,* 55 Wn.2d 400, 348 P.2d 664, 77 A.L.R.2d 1344 (1960); *Martin v. Port of Seattle,* 64 Wn.2d 309, 391 P.2d 540 (1964).

fusal of the county to even attempt to correct the cause of the damage, for at least 4 years prior to trial (and now, perhaps, for a longer period), is some indication that the damage *may* be permanent.

If the damage be permanent, plaintiff is entitled to *judgment for the* difference between the market value of the property immediately before the damage and its market value immediately thereafter. Although the court found the value before damage to be $114,000, there is no definitive finding of value immediately thereafter, except that the property is "substantially unfit for use."

We have already noted the reasons a judgment in plaintiff's favor for the cost of restoring the property by repairing the damage would be useless to him. Further, there is no finding of the value of the loss of use of the land for *4 years* prior to trial, unless it be the money judgment of $4,500.

We are at once confronted with an inconsistency upon the face of the record. The court allowed $50-per-day damages after September 1, 1965 if the damage had not been repaired by the county between April 13, 1965, the date of the judgment, and September 1, 1965. This is at the rate of $18,250 *per year*. For an explanation, we turn to the trial court's oral opinion.

The thrust of plaintiff's argument is that he is entitled *to a percentage return on the value of the property* for each of the 4 years he has been deprived of its use. The trial judge discusses the application of 4, 6, 7 and 8 per cent of $114,000, the value the court placed upon the property. He concluded that plaintiff "should be compensated rather, for an amount of money roughly equivalent to the value of the use of the premises for *one* year." (Italics ours.) This amount the court "rounded off" at $4,500, which is 4 per cent of $114,000, with $60 being lost in the shuffle. Clearly, this method of damage determination is violative of the rule announced in *Harkoff, supra.*

Finally, we consider the $50-a-day damage to accrue after September 1, 1965 if the county has not repaired the

damage by that date. This penalty was not imposed April 13, 1965, the date of judgment. The intervening time was undoubtedly to permit the county to repair the damage without further penalty. The $50-a-day penalty is coercive and speculative. It is not based upon any finding or evidence called to our attention.

King County's wrongful acts have damaged plaintiff's property. Its refusal to remedy the wrong, as directed by the trial court, has unduly extended this litigation. The problem should be resolved. We must discharge our responsibilities as in good conscience we think we must.

The circumstances of the instant case require that we make the following conclusions:

*First*: That portion of the judgment of April 13, 1965, directing defendant county to do certain things and refrain from doing others is affirmed.

*Second*: That portion of the judgment directing defendant county to pay $4,500 into the registry of the court, with $50-per-day continuing damages after September 1, 1965, if the county has failed to comply with the judgment, is reversed.

*Third*: This case is remanded to the trial court with the following directions:

(a) If, within 45 days from the issuance of the remittitur of this court in the instant case, defendant county has remedied the damage done by it to plaintiff's property and restored it to its original condition as required by the rule in *Harkoff, supra*, plaintiff may petition the court for a further hearing and trial to determine the value of the loss of use of plaintiff's property since the damage first occurred, and judgment shall be entered for this amount in favor of plaintiff.

(b) If, within 45 days from the issuance of the remittitur of this court in the instant case, defendant county has *not* remedied the damage done by it to plaintiff's property and has not restored it to its original condition as required by the rule in *Harkoff, supra*, plaintiff may petition the court for a further hearing and trial

(i) to determine the market value of plaintiff's property after the damage was done and to enter judgment in favor of plaintiff against defendant county for the difference between $114,000 and the market value of the property immediately after the damage was done, and

(ii) to determine and enter judgment for the value of the loss of use of plaintiff's property since the damage first occurred.

*Fourth*: Plaintiff-and-cross-appellant shall recover costs on this appeal.

It is so ordered.

FINLEY, C. J., ROSELLINI and HALE, JJ., and DENNEY, J. Pro Tem., concur.