[No. 26543-5-II. Division Two. August 24, 2001.]

JEFF ROTHWEILER, ET AL., *Appellants*, v. CLARK COUNTY, *Respondent*.

92

*Gregory R. Harris* and *Daniel P. Larsen* (of *Ater Wynne, L.L.P.*); and *Heather Jo Van Meter*, for appellants.

*Arthur D. Curtis, Prosecuting Attorney*, and *E. Bronson Potter, Deputy*, for respondent.

BRIDGEWATER, J. — The Rothweilers appeal the summary judgment dismissal of their claims of negligence, nuisance, and negligent intrusion against Clark County (County) for failing to properly maintain and improve the stormwater drainage system, which allegedly caused flooding at their residence. Under the common enemy doctrine, a landowner may dispose of surface water without liability, with some exceptions. Because there is no evidence that the County (1) inhibited the flow of a waterway or natural drain, (2) artificially collected and discharged water on the Rothweilers' property, or (3) altered the flow of water such that it needed to use due care to avoid unnecessary damage to the Rothweilers' property, it had no duty to prevent the flooding damage to the Rothweilers' property. Thus, no exception to the common enemy doctrine applied. And the

County ordinances did not create a duty to update the drainage system. Further, there is no evidence that, once the drains were constructed, the County breached its duty to exercise reasonable care in maintaining the drainage system. We affirm.

On June 4, 1997, a rainstorm overwhelmed the County's stormwater drainage system. The stormwater drainage system failed to properly drain accumulated water causing the water level to rise and flood the Rothweilers' home. The Rothweilers' home is located in the Totem II subdivision at a low point in the intersection of NW 3rd Avenue and NW 114th Street. The County concedes that the rainstorm overwhelmed the capacity of a 12-inch pipe section of the system causing water to back up and ultimately overflow the system. For purposes of summary judgment, the County assumed that the cause of the flood was the limited capacity of the 12-inch drainage pipe.

There are several sections of drainage pipe that make up the drainage system near the Rothweilers' home. The system ultimately drains into Suds Creek. Following the system "upstream," it consists of a 24-inch diameter drainage pipe that extends from the outfall to the southwest. The 12-inch pipe at issue branches off this 24-inch pipe and extends west through the Vista Heights neighborhood. The section of 12-inch pipe was approved around 1964. A section of 36-inch pipe leading from the 12-inch pipe going west through the Totem Acres subdivision at NE 2nd Avenue was approved in 1978. The next section, a 30-inch drainage pipe, leading west from the 36-inch pipe in Totem Acres subdivision and going past the Rothweilers' residence was approved in 1989 as part of the Totem II subdivision. Private developers and their engineers designed and proposed these systems, and the County approved the designs. The County allowed new development projects to add drainage, which flowed into the 12-inch pipe, but the drainage system's capacity was inadequate and could not provide for the proper outflow of water collected into it.

The storm drainage system ran under NW 3rd Avenue in

front of the Rothweilers' home and extended to the north up NW 3rd to 116th Street where it made a 90 degree bend eastward, ultimately draining into Suds Creek. A catch basin for that drainage system was located on NW 3rd Avenue next to the Rothweilers' front yard and driveway.

Shortly before the flood, the Rothweilers were planning to sell their home. Ingrid Rothweiler stated that before the flood Tapani Underground, Inc. and Clark Public Utilities were working on the water main near their house. She saw them store large piles of sand and rock and several pieces of construction equipment on NW 3rd Avenue in front of her home and up the street for several weeks. She stated that significant amounts of sand and other debris collected in the street. Concerned that the messy street would hinder potential buyers, Ingrid Rothweiler called Clark County Public Works at least three times in May 1997 to urge them to clean up the sand and debris on NW 3rd Avenue and other streets.

Scott Wilson, the crew chief responsible for drainage facilities maintenance, acknowledged receiving a citizen complaint about debris in the street. In response to that complaint, a street sweeper was dispatched on May 19, 1997, to clean up dirt and sand at the Rothweilers' intersection. The County also stated that its policy was to inspect catch basins every 18 months as part of regular maintenance. Wilson stated that the catch basins adjacent to the Rothweilers' home were cleaned less than six months before the June 4 flooding. Wilson also stated that his crew cleaned the drainage line in the area where the 36-inch drainage pipe connects with the 12-inch pipe on October 16, 1996, less than eight months before the flooding.

It is undisputed that the County knew the 12-inch pipe was inadequate to handle the stormwater from the new developments that were added to the system. Despite its knowledge of this inadequacy, the County declined to increase the capacity of the 12-inch drainage pipe until after the June 4 flood.

In 1991, the Clark County Department of Public Services

requested funding to increase the capacity of the inadequate 12-inch pipe to a 36-inch pipe and recommended that the project be completed in 1992. The County Public Works Director could undertake small projects, in the range of $5,000 to $15,000, without the Commissioner's review. But the Commissioner's approval was required for larger improvements. The Department listed this project as priority number four in a list of seven projects proposed to the Board of County Commissioners for the Salmon Creek basin. The Commissioners did not fund the project. In 1997, the Commissioners again considered the drainage system as part of the larger Lake Shore/Salmon Creek Watershed Area Plan, but did not approve funding for that $42.8 million dollar plan. The project to improve the system serving the Rothweilers' residence was one of over 200 stormwater infrastructure projects in that plan. Finally, in late 1997 after the June 4 flood that damaged the Rothweilers' home, the Commissioners again considered the drainage system and authorized replacement of the 12-inch pipe with a larger pipe. The cost of the project was $131,000.

The Rothweilers sued the County, Clark Public Utilities, and Tapani Underground, Inc. for the flood damage. The Rothweilers sued the County for negligence, negligent intrusion, nuisance, statutory nuisance, and statutory negligence based on the County's failure to maintain its stormwater drainage system, including the failure to inspect and upgrade the drainage system and to design, construct, or approve an adequate system. The County moved for summary judgment. Clark Public Utilities and Tapani Underground, Inc. were not parties to the motion for summary judgment or to this appeal. The trial court granted summary judgment in favor of the County.

When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the

absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). We must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Wilson*, 98 Wn.2d at 437.

## I

██ ██ For over a century, Washington courts have adhered to the common enemy doctrine. *Currens v. Sleek*, 138 Wn.2d 858, 861, 983 P.2d 626, 993 P.2d 900 (1999); *Cass v. Dicks*, 14 Wash. 75, 78, 44 P. 113 (1896). "In its strictest form, the common enemy doctrine allows landowners to dispose of unwanted surface water in any way they see fit, without liability for resulting damage to one's neighbor." *Currens*, 138 Wn.2d at 861. Surface waters are defined as diffused " 'waters produced by rain, melting snow, or springs.' " *DiBlasi v. City of Seattle*, 136 Wn.2d 865, 873 n.2, 969 P.2d 10 (1998) (quoting *King County v. Boeing Co.*, 62 Wn.2d 545, 550, 384 P.2d 122 (1963)). In addition, a municipality has no common law duty to drain surface water. *Colella v. King County*, 72 Wn.2d 386, 391, 433 P.2d 154 (1967) (citing *Ronkosky v. City of Tacoma*, 71 Wash. 148, 153, 128 P. 2 (1912)). But because a strict application of the common enemy doctrine is widely regarded as inequitable, courts have adopted several exceptions to the doctrine. *Currens*, 138 Wn.2d at 861-62. The Rothweilers contend that the County is liable under all three exceptions; we discuss each separately.

*A. Watercourse or Natural Drainway*

██ ██ The first exception provides that a municipality or landowner may not inhibit the flow of a watercourse or natural drainway. *Currens*, 138 Wn.2d at 862; *Ronkosky*, 71 Wash. at 151-53. Under this exception, a municipality that dams up a stream, gully, or natural drainway will not be shielded from liability for resulting damage. "A natural drain is that course, formed by nature, which waters naturally and normally follow in draining from higher to

lower lands." *Boeing Co.*, 62 Wn.2d at 550. The County's drainage system involved surface water flowing through a system of catch basins and drainage pipes, not a drain formed by nature. Although the water in the drainage pipes and catch basins generally followed the path that surface water would have naturally flowed above ground, the County's system was not a natural drainway or watercourse. There is no evidence in the record showing that the County inhibited the flow of a waterway or natural drain. Thus, this exception does not apply.

### B. Collect and Discharge

■ ■ Another exception provides that surface waters may not be artificially collected and discharged on adjoining lands in quantities greater than or in a manner different from the natural flow thereof. *Colella*, 72 Wn.2d at 390; *Boeing Co.*, 62 Wn.2d at 550-51. Because the government has no common law duty to drain surface water not artificially channeled or collected, it is not ordinarily liable for the increased flow of surface water that results from constructing or allowing others to construct roads, homes, or other improvements that prevent surface water from percolating into the ground. *Gaines v. Pierce County*, 66 Wn. App. 715, 721, 834 P.2d 631 (1992) (citing *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 875, 523 P.2d 186 (1974), *overruled on other grounds by Phillips v. King County*, 136 Wn.2d 946, 968 P.2d 871 (1998)), *review denied*, 120 Wn.2d 1021 (1993). It is not permitted to concentrate and gather such water into artificial drains or channels and throw it on the land of an individual owner in such manner and volume as to cause substantial injury to such land and without making adequate provision for its proper outflow, unless compensation is made. *Wilber Dev. Corp.*, 83 Wn.2d at 874-75.

The Rothweilers claim that the County collected and unnaturally discharged stormwater onto their property. But a thorough review of the record reveals that the Rothweilers did not provide evidence leading to an inference that the stormwater drainage system discharged any water onto their property.

A resident in the neighborhood, Daryl Williams, stated that on the day of the flood, water poured out of a manhole cover near his house where the 36-inch pipe and 12-inch pipe connect. Williams lived on 114th Street next to NE 2nd Avenue near the connection of the 36-inch pipe and 12-inch pipe. The Rothweilers lived several blocks away at the intersection of NW 114th Street and NW 3rd Avenue. The record is inadequate to show most of the topography of the neighborhood. The record indicates only that the Rothweilers' residence is located at the lowest point of their intersection and that the stormwater system was developed generally following the path that water would naturally flow to its outfall at Suds Creek. The direction that the stormwater flowed through the drainage system indicates that the manhole cover near Williams' residence was "downstream" from the Rothweilers' residence. The Rothweilers did not present evidence showing that the manhole was "upstream" (in the drainage system) from their property or that water could have flowed from that manhole several blocks to their property.

■ The Rothweilers had two experts, Livick and Woodward. Woodward opined only that the flood was caused by the inadequate 12-inch pipe being overwhelmed and failing to provide for the *proper outflow* of water collected and channeled into it. He further stated that there is no record of the drainage system discharging water near the Rothweilers' property. Rather, he stated that water had been observed to flow out of the catch basins in a different area on NE 2nd Avenue closer to the 12-inch pipe. Livick initially stated that the inadequate 12-inch pipe caused water to back up and be thrust into the intersection near the Rothweilers' property. But Livick recanted that statement in a later declaration, stating that it was based on an assumption that the water was flowing out of the catch basins. In the context of a summary judgment motion, an expert must support his opinion with specific facts, and a court will disregard expert opinions where the factual basis for the opinion is found to be inadequate. *Hash v. Children's*

*Orthopedic Hosp. & Med. Ctr.*, 49 Wn. App. 130, 135, 741 P.2d 584 (1987), *aff'd*, 110 Wn.2d 912 (1988). Because Livick admitted that he had no factual basis for his first opinion, we disregard it.

Accordingly, there is no evidence that the County's stormwater drainage system discharged surface water onto the Rothweilers' property and this exception does not apply.

*C. Due Care*

■ The Washington Supreme Court recently acknowledged a due care exception requiring landowners who alter the flow of surface water on their property to exercise their rights with due care by acting in good faith and by avoiding unnecessary damage to the property of others. *Currens*, 138 Wn.2d at 865.

The County acknowledges that the other exceptions to the common enemy doctrine would expose a municipality to liability if it collected and discharged or obstructed a natural drainway. But the County contends that the due care exception in *Currens* does not apply here because it, as a municipality, did not invoke the common enemy doctrine.

■ ■ Generally, municipal rights and liabilities as to surface waters are the same as those of private landowners within the city. *Phillips v. King County*, 136 Wn.2d 946, 958, 968 P.2d 871 (1998) (citing 18A EUGENE MCQUILLIN, LAW OF MUNICIPAL CORPORATIONS § 53.140, at 307 (James Perkowitz-Solheim et al. eds., 3d ed. rev. vol. 1993)). The County has stated no public policy reason why all exceptions to the common enemy doctrine should not apply in this context nor has it directed this court to any law restricting the use of this due care exception. Further, the County's argument is undermined by *Currens'* reliance on several cases involving governmental activities. *Currens*, 138 Wn.2d at 864 (relying on *DiBlasi v. City of Seattle*, 136 Wn.2d 865, 878, 969 P.2d 10 (1998); *Laurelon Terrace, Inc. v. City of Seattle*, 40 Wn.2d 883, 893, 246 P.2d 1113 (1952); *Wood v. City of Tacoma*, 66 Wash. 266, 273-74, 119 P. 859 (1911)). Thus, all

exceptions to the common enemy doctrine, including the due care exception, apply to municipalities.[1]

In *Currens*, the defendant clear-cut and graded her property to develop homesites on her land. *Currens*, 138 Wn.2d at 860. In an Environmental Checklist submitted to the Department of Natural Resources, the defendant indicated that she would plant trees to enhance vegetation and would install dry wells to mitigate stormwater impacts. *Currens*, 138 Wn.2d at 860. But after employing a logging contractor to clear-cut and grade her land, she took no further action to revegetate the land, install dry wells, or otherwise reduce the flow of surface water. *Currens*, 138 Wn.2d at 860. The logging substantially increased the volume and peak flow rates of surface water onto the Currens' property, causing 11 trees to fall and endangering the safety of their home. *Currens*, 138 Wn.2d at 860. The Washington Supreme Court held that the failure to comply with the Environmental Checklist raised a genuine issue of material fact as to whether the defendant and the logging contractor made the changes in surface water flow in good faith and with such care as to avoid unnecessary damage to the Currens' property. *Currens*, 138 Wn.2d at 868.

 ██ The Rothweilers contend that the County did not exercise due care when it diverted surface water into its overburdened drainage system. The Rothweilers cite a passage in *Currens* that states, "We have also held that a landowner may not increase drainage of surface water into a drainway to such an extent that the capacity of the drain is overtaxed." *Currens*, 138 Wn.2d at 864 (citing *Strickland v. City of Seattle*, 62 Wn.2d 912, 916-17, 385 P.2d 33 (1963)). But *Strickland* involved a stream and the corresponding law that a City is not negligent if it increases the flow of water through a stream or natural drainway unless the

---

[1] We consider the proper analysis here to be under the common enemy doctrine as set forth in *Currens*, 138 Wn.2d 858. We conclude that consideration under the public duty doctrine is inappropriate. (The public duty doctrine shields a public official's negligent conduct from liability unless the duty was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general. *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988) (citations omitted).).

drainage is increased beyond the capacity of the water-course in its natural condition. *Strickland*, 62 Wn.2d at 915.[2] As previously noted, the present case does not involve a stream or natural drainway. Thus, *Strickland* is inapposite.

As *Currens* illustrates, a landowner is liable for damage caused by errant surface water flows only where the land-owner has engaged in activities that alter the natural flow. *See Currens*, 138 Wn.2d at 865-67. Thus, before the due care exception can be applied, *Currens* requires that the defendant must "alter the flow of surface water." *Currens*, 138 Wn.2d at 865. The Rothweilers' claim fails because they presented no evidence that the County altered the flow of the surface water. All the evidence shows that the Rothweilers' home was located at the low point of the intersection of NW 3rd Avenue and 114th Street and that this location is the area where stormwater would naturally accumulate if it was not drained by a stormwater system. Further, it is undisputed that the stormwater system was developed generally following the path that water would naturally flow to the outfall at Suds Creek. This evidence indicates that the surface water, which flooded the Rothweilers' home, naturally accumulated at their intersection. The Rothweilers did not document any unnatural runoff resulting from the drainage system or show that the system enlarged the watershed. Simply put, failing to drain naturally accumulating water does not constitute altering the flow of surface water. Their evidence is insufficient to justify going forward with their claims based on the due care exception as articulated in *Currens*, 138 Wn.2d at 865-68.

---

[2] In *Strickland*, the plaintiff claimed that the City of Seattle increased the flow of water and sediment in a stream, which interfered with their property. The court stated that there is no liability where development and improvements cause an acceleration of the velocity and turbulence of water in a stream, which is the natural receiver of surface waters drained from the area. The court reversed an injunction and held that the plaintiffs did not show that the City increased the flow of the stream beyond its natural capacity. *Strickland*, 62 Wn.2d at 916-17.

## II

In addition to the above duties created by the exceptions to the common enemy doctrine, a municipality also has the duty, once it constructs a drain, to exercise reasonable care to maintain the drain's original efficiency. *Colella*, 72 Wn.2d at 391.

In *Colella*, King County collected surface water from a road and artificially diverted it from its natural flow through a culvert into a ravine on the plaintiff's property. *Colella*, 72 Wn.2d at 390. The court relied on *Ronkosky*, 71 Wash. 148:

> [T]he city, while under no primary obligation to furnish drainage for surface water, even if this stream could be considered surface water, had a discretionary power so to do. Having constructed this drain and undertaken the performance of this discretionary duty, the obligation to maintain the drain in a safe and suitable condition was no longer a matter of mere discretion. Though the city would not be liable for errors of judgment in adopting an inadequate plan or system of drainage, having once adopted an efficient plan and constructed an adequate drain, there arose the positive duty to exercise reasonable care to maintain its original efficiency.

*Ronkosky*, 71 Wash. at 153.

Here, the County had an adequate drainage system in 1964, which drained stormwater from the Vista Heights area. In 1978 and in 1989, the County added on 36 and 30-inch drainage pipes to the 12-inch pipe. These larger pipes were in the Totem Acres and Totem II subdivisions. The large pipes were designed to flow into the smaller 12-inch pipe, and the 12-inch pipe had not been altered before the Rothweilers' home was flooded. While the City may be liable for failing to maintain the "original efficiency" of the 12-inch pipe for the Vista Heights neighborhood, the portions of the drainage system in Totem Acres and Totem II subdivisions were never adequately designed for those areas. The County never constructed an adequate drain to service the Totem subdivisions before the flooding occurred.

The County admits for the purposes of summary judgment that the inadequacy of the drainage system caused the system to be unable to drain all the stormwater that accumulated near the Rothweilers' house. At most, the County's involvement in attaching the 30 and 36-inch pipes to the smaller 12-inch pipe was an error in judgment creating an inadequate system for Totem II and Totem Acres. As provided in *Ronkosky*, the County is not liable for errors in judgment in adopting an inadequate plan or system of drainage. The County would be liable only for maintaining the original efficiency of the system once it had adopted an efficient plan and constructed an adequate drain. *Colella*, 72 Wn.2d at 391; *Ronkosky*, 71 Wash. at 153. The County had no duty to update the system. Because we hold that in this case there was no duty to update the system, we do not discuss discretionary immunity of the County.

That is not to say the County has no duty in relation to the limited capacity drainage system in the Totem subdivisions. The County had the duty to maintain the level of stormwater drainage it had developed in its stormwater drainage system. This includes the duty to use reasonable care in inspecting the drainage pipes and keeping them clear from debris. *See Ronkosky*, 71 Wash. at 154 (whether the City was negligent by allowing the culvert to become clogged was a question for jury).

Ingrid Rothweiler stated in her declaration that she called the County and complained about a large amount of sand and debris on the road the month before the flood. She saw Clark County Public Works and Tapani, Inc. flushing and sweeping sand and other debris into the catch basins. And she stated that she did not see the County clean the streets or inspect the catch basins after her complaints. The Rothweilers assert that the County should have inspected the catch basins for sand and debris when Ingrid Rothweiler called in her complaints. The County produced evidence that it sent out a street sweeper after Ingrid Rothweiler's complaints and that it had cleaned the catch

basin six months before the flooding and the drainage line where the line goes from a 36-inch diameter to a 12-inch diameter less than eight months before the flooding.

There was no evidence that the drainage system was clogged. Woodward, the consulting engineer for the Rothweilers, hypothesized that the flooding was caused either by excessive water that "overwhelmed the capacity of the twelve-inch storm pipe" or a plug in the system that caused water to back up. Woodward stated in his report that the drainage pipe was not plugged on the day of the flood. Woodward's opinion that the flooding was not due to a plug in the system was based on observations by Scott Wilson, the Maintenance and Operations Supervisor for Clark County. Wilson noted that once the floodwater was vacuumed up, the water was flowing through the pipes. In contrast, Jeff Rothweiler stated that he felt the water by the catch basin and it was not flowing into the drainage system the night of the flood. While there is evidence that the water was not moving or draining at the Rothweilers' residence, the only evidence produced by both sides was that it was caused not by being plugged, but by being overwhelmed.

The Rothweilers have not produced any evidence to indicate what additional maintenance activities the County should have undertaken or improperly performed. They have failed to meet their burden in responding to the motion for summary judgment to produce evidence supporting each element of their claim. *See Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Thus, there is no genuine issue of material fact based on improper maintenance. The trial court did not err.

### III

The Rothweilers further contend the County violated a duty created by the Clark County Code (CCC) and owed individually to them. The Rothweilers assert that former chapter 13.25 CCC *repealed by* Clark County Ordinance 1999-11-26, in effect since 1994, established a duty to

maintain the stormwater drainage system. A statutory duty may provide a reasonable person standard of conduct but only if the statute specifying such duty meets the four-part test in the *Restatement (Second) of Torts* § 286 (1965). That test requires that the statute's purposes be (1) to protect a class of persons that includes the person whose interest is invaded; (2) to protect the particular interest invaded; (3) to protect that interest against the kind of harm that resulted; and (4) to protect that interest against the particular hazard from which the harm resulted. *Hansen v. Friend*, 118 Wn.2d 476, 480-81, 824 P.2d 483 (1992).

The County properly submits that the portions of the code relied on by the Rothweilers apply to new developments and new stormwater facilities. The Rothweilers cite former CCC 13.25.230, which was enacted in 1994. But that ordinance on long term maintenance applies to "new" stormwater facilities. Former CCC 13.25.230. The drainage pipes at issue were constructed between 1964 and 1989. In fact, the code states that it applies to development activities, including certain creation, addition, or replacement activities and the excavation or construction of pipes and stormwater facilities. Former CCC 13.25.120, .130(11). But the quality control ordinance, former CCC 13.25.220, is the only pertinent portion of former chapter 13.25 CCC that seems to apply to existing drainage systems. It provides that:

[N]o reduction of existing conveyance capacity and no net loss of existing storage capacity . . . is permitted in special flood hazard areas as defined in Section 18.327.045(B). This requirement shall also apply to all areas within the limits of existing one hundred (100) year floodplain . . . for all streams and man-made channels within Clark County.

Former CCC 13.25.220(1)(e).

The drainage pipes in the stormwater drainage system are "man-made channels within Clark County." At most, former CCC 13.25.220 imposes only a duty not to reduce the established capacity of existing drainage pipes. The Rothweilers do not contend that the County reduced the

capacity of the drainage pipes. Rather, they assert that the County breached its duty to improve the drainage system and increase the size of the pipes once they became inadequate to handle the increased amount of stormwater. The Clark County Code does not impose that duty for stormwater drainage facilities. Moreover, these ordinances illustrate how the Clark County Code specifically distinguishes between "new" stormwater facilities and "all . . . man-made channels" within the County.

The Rothweilers claim that not interpreting the maintenance provision of the code, former CCC 13.25.230, to apply to the pre-1994 portions of the drainage system would lead to absurd results because the County cannot be responsible for maintaining only part of a drainage system that is interconnected. Although they discuss it extensively, the Rothweilers neglect to acknowledge the common law duty to maintain the drainage system once the County undertakes that obligation.

The Rothweilers additionally contend that the predecessor code adopted in 1978 buttresses their argument. The Rothweilers' argument concerning former ordinances and a resolution appeared for the first time in the Rothweilers' Reply Brief. Before the trial court, the Rothweilers argued only that the current county ordinances in effect since 1994 established a duty. We do not consider the argument based on the resolution or former ordinances because on review of a summary judgment motion this court considers only issues called to the trial court's attention. RAP 9.12.

Moreover, the Rothweilers misperceive the binding nature of the resolution. The resolution is replete with nonbinding language, including that the Board of Commissioners "states its intent" "to diligently pursue" or "to seek solutions" and statements of several "findings" and what "should" be done. The Rothweilers claim that this resolution *required* owners and developers to pay for the County's stormwater drainage facilities. But the resolution merely provided that:

> The Board finds that the most financially sound and most equitable method for financing such improvements as are necessary to provide and maintain surface water quantity and quality within basins and subbasins *would be* for the owners and occupiers of existing properties and future developments . . . to share the financial burden for such facilities and corrections with other funding sources when available.

Ex. A at 2, Section Four. A statutory duty may provide a reasonable person standard of conduct, but the former ordinances that the Rothweilers cite do not require the performance of any duty and they do not define any specific standard of conduct. Thus, they cannot form the basis for a statutory negligence claim.

The maintenance ordinances enacted in 1994 do not apply to the drainage system at issue. Furthermore, the nonbinding language does not support the Rothweilers' argument. The trial court properly dismissed the Rothweilers' claims premised on statutory negligence in violating the Clark County Code.

Affirmed.

MORGAN and SEINFELD, JJ., concur.

Review denied at 145 Wn.2d 1029 (2002).