[No. 13562-7-I.   Division One.   February 10, 1986.]

GEORGE R. HUGHES, ET AL, *Appellants,* v. KING COUNTY, *Respondent.*

*Montgomery, Purdue, Blankinship & Austin* and *John D. Blankinship,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *James L. Brewer, Deputy,* for respondent.

SWANSON, J.—Both parties appeal from a King County Superior Court judgment granting appellants recovery for damages sustained when a storm sewer owned, maintained, and operated by respondent/cross appellant King County, overflowed and flooded the appellants' property.

Most of the material facts are undisputed. The appellants, plaintiffs below, own real property on the west side of First Avenue South, between 150th and 152nd Streets in south King County, that is leased to appellant Evergreen Motors, Inc., for use as an automobile showroom and parking lot. The land lies largely in a swale. In 1956, King County, the defendant below, obtained an easement

through the property for installation of a storm sewer drainage system. The system collects and conveys waters from the north as well as from appellants' property.

> The county's storm sewer runs from north to south through the plaintiffs' property to a manhole in 1st Avenue South where it is joined by another county storm sewer from the north. The drain line then extends across 1st Avenue South where it connects with a private storm sewer around the Pizza Hut, thence into a 36" culvert under S.W. 152nd Street and to an outfall in an open ditch south of S.W. 152nd Street.

Finding of fact 6.

In 1969, following appellants' complaints of flooding, King County considerably enlarged the system's capacity. Thereafter, no flooding was reported until 1980, despite the occurrence of numerous, substantial periods of rain, including one 15–year storm, two 10–year storms, one 7–year storm, and five 2–year storms. Beginning in January 1980, flooding was reported at numerous times when there was less than a 2–year storm and even when only a trace of rain had fallen.

On October 5 and 6, 1981, a "75–year storm"[1] caused severe flooding of appellants' property. Evergreen Motors was forced to shut down for 4 days and numerous cars and trucks parked in the area were damaged. In addition, hydraulic pressures in the system blew a manhole cover off of the storm sewer running through appellants' property. The manhole had been covered with fill and blacktop, and when the cover erupted, a considerable portion of appellants' parking lot was undermined, requiring replacement.

The appellants subsequently filed suit, seeking both compensatory damages and injunctive relief from any further flooding. Following trial, the trial court awarded plaintiffs $14,920 in damages caused by the 1981 flood. The trial court found that a "bottleneck," *i.e.,* a pipe of inadequate capacity, in the private storm sewer located downstream

---

[1] A "75–year storm" is a storm that has a 1/75 chance of occurring in any particular year, or would be expected to occur only once every 75 years.

from appellants' property caused the county's storm sewer to back up and overflow. The trial court concluded that the recurring flooding constituted trespasses by the defendant King County and that the County had failed to sustain its burden of proving that the flooding was not the result of its own actions.

The trial court denied plaintiffs' request for a permanent injunction that would have required the County to upgrade the sewer system or would have enjoined any further flooding. The trial court concluded that decisions regarding an increase in the capacity of the drainage system involved the exercise of discretion for which a mandatory injunction would not lie. Alternatively, the court determined that damages were an adequate remedy, since it awarded plaintiffs reasonable attorneys' fees and expert witness fees should future flooding require legal action. Finally, the trial court declined to award plaintiffs any recovery resulting from damage to the asphalt caused by the manhole cover's eruption, finding that plaintiffs' own contractor had covered the manhole.

Both parties have appealed. Appellants Hughes and Ryder challenge the trial court's denial of injunctive relief and its failure to award damages for blacktop repair. Cross appellant King County challenges the trial court's determination of liability, contending that it was error to place on it the burden of proving that its acts were not the cause of the flooding.

The scope of review on appeal "is limited to determining whether the findings are supported by substantial evidence, and if so, whether the findings in turn support the trial court's conclusions of law and judgment." *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 372–73, 617 P.2d 704 (1980); *Park v. Ross Edwards, Inc.*, 41 Wn. App. 833, 836, 706 P.2d 1097 (1985).

The trial court entered the following conclusion of law regarding the 1981 flooding:

The floods which occurred in 1981 and thereafter and which are recurring constitute trespasses by the defend-

ant as dominant owner [*sic*] of the easements on land of the plaintiffs as owners of the servient estate.

Conclusion of law C. Liability for trespass exists only when there is an intentional or negligent intrusion, or some abnormally dangerous activity on the part of the defendant. Restatement (Second) of Torts §§ 158, 165, 166 (1965); *see also Zimmer v. Stephenson,* 66 Wn.2d 477, 403 P.2d 343 (1965); 75 Am. Jur. 2d *Trespass* § 6 (1974). Trespass also occurs upon the misuse or overburdening of an easement. *Brown v. Voss,* 38 Wn. App. 777, 782, 689 P.2d 1111 (1984), *review granted,* 103 Wn.2d 1015 (1985); *Raven Red Ash Coal Co. v. Ball,* 185 Va. 534, 39 S.E.2d 231, 233, 167 A.L.R. 785 (1946). Neither theory is supported by the evidence or findings in this case. The plaintiff bears the burden of establishing the elements of trespass. *Northern Pac. Ry. v. Sunnyside Vly. Irrig. Dist.,* 85 Wn.2d 920, 924, 540 P.2d 1387 (1975).

No evidence suggests that King County has in any way materially altered the flow of water through the drainage system. The trial court specifically found, based in part on testimony of appellants' witnesses, that no substantial upstream development had occurred since 1969, when the County enlarged the drainage system through plaintiffs' property, that would have caused the frequent flooding. In fact, the only evidence of increased usage involved additional drainage that Evergreen Motors itself had added to the system.

Nor is there any evidence that negligence by King County contributed in any way to the flooding that damaged appellants' property. Negligence could have arisen at several stages, including the design, construction, and maintenance of the drainage system. No finding was made that the County's design, construction, or maintenance of the system's pipes upstream and through appellants' property were deficient in any manner. Although the trial court noted that the County had not inspected or maintained the pipe running through appellants' property since 1969, no evidence suggests that failure to inspect this portion of the

system in any way caused the flooding. The trial court found:

> A bottleneck [*i.e.,* an undersized pipe] exists in the private storm sewer system under the Pizza Hut property between the east margin of 1st Avenue South and the outfall into the open ditch south of S.W. 152nd Street which causes the county's storm sewer on the plaintiffs' property to overflow and flood the servient estate.

Finding of fact 6.

The County concedes that it has a duty to provide for the proper outflow of waters collected by an artificial drain. *See, e.g., Wilber Dev. Corp. v. Les Rowland Constr., Inc.,* 83 Wn.2d 871, 875, 523 P.2d 186 (1974). However, the trial court's finding that the downstream pipe, part of the private system, was inadequate, is contradicted by another finding, supported by substantial evidence:

> No flooding occurred during the 10 years from January 1970 to December 1979, despite the occurrence of many very substantial 24–hour periods of rain as shown in Exhibit 21, including one 15–year storm, two 10–year storms, a 7–year storm and five storms equal to or greater than 2–year storms.

Finding of fact 5. No explanation is offered as to why the private system, which adequately collected the water from the County's system for 10 years, has become inadequate, even though no increased burden was placed upon it.[2]

Appellants contend that King County is liable for trespass, even absent any intentional acts or negligence,[3] arguing, in effect, that the County is strictly liable for the flooding. Authorities cited by appellants for this proposi-

---

[2]In its memorandum opinion, the trial court suggested that caked mud located in pipes downstream from appellants' property also contributed to the "bottleneck," but this explanation was not adopted in the written findings.

[3]Appellants' citation to *Fordney v. King Cy.,* 9 Wn.2d 546, 558, 115 P.2d 667 (1941), which contains such a statement, is misleading. The court clearly was stating that the intentions of the trespasser are unimportant, not the lack of intentional action. *See also Bradley v. American Smelting & Ref. Co.,* 104 Wn.2d 677, 683, 709 P.2d 782 (1985) (act intentional for purposes of trespass if volitional and undertaken with substantial certainty that trespass will occur).

tion are inapplicable to the present case. Those decisions involve material alterations in an easement's use, *i.e., Triplett v. Beuckman,* 40 Ill. App. 3d 379, 352 N.E.2d 458 (1976), or intentional or negligent actions by the defendant, *i.e., Sharon v. Connecticut Fire Ins. Co.,* 270 So. 2d 900 (La. Ct. App. 1972) (negligent operation and design of sewage system); *Bell v. Union Elec. Co.,* 367 S.W.2d 812 (Mo. Ct. App. 1963) (impounding of waters); *Burton v. Douglas Cy.,* 14 Wn. App. 151, 539 P.2d 97 (1975) (design of road collected and discharged waters). Appellants have failed to sustain their burden of showing that an intentional or negligent action by the County caused the flooding of their property[4] or that the County was negligent in designing, constructing, or maintaining the system.

The trial court concluded that:

> Floods which occurred in 1981 and thereafter are unanticipated burdens upon a servient estate which the defendant has failed to prove are not due to acts of defendant King County despite the burden of proof being upon defendants.

Conclusion of law D. In its memorandum opinion, the trial court analogized the situation to the doctrine of res ipsa loquitur, a contention that appellants have embraced on appeal. For several reasons, the doctrine is inapplicable to the facts in the present case.

■ Under the doctrine of res ipsa loquitur a presumption of negligence may be established if (1) the occurrence producing the injury is of a kind that ordinarily does not happen in the absence of someone's negligence; (2) the injuries are caused by an instrumentality within the exclusive control of the defendant; and (3) the injury–causing occurrence is not due to any action on the part of the plaintiff. *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.,* 62 Wn.2d 351, 359, 382 P.2d 518 (1963); *Cusick v. Phillippi,* 42 Wn. App. 147, 155, 709 P.2d 1226 (1985).

---

[4]Appellants' own expert testified he had no information suggesting ponding was in any way due to the acts of King County.

The trial court entered no finding that flooding of a storm sewer system is the kind of occurrence that ordinarily does not happen in the absence of someone's negligence. Our Supreme Court has described three types of situations that do not normally occur absent negligence: (1) the act causing injury is palpably negligent, such as leaving foreign objects in a patient; (2) when general experience teaches that the result would not be expected without negligence; (3) when proof by experts in an exotic field creates an inference that negligence caused the injuries. When such an occurrence is found, the inference of negligence shifts to the defendant "the duty to come forward with an exculpatory explanation, rebutting or otherwise overcoming the presumption or inference of negligence on his part." *Horner* (quoting *Morner v. Union Pac. R.R.,* 31 Wn.2d 282, 196 P.2d 744 (1948)). None of these situations applies to the present case.

In *Kind v. Seattle,* 50 Wn.2d 485, 312 P.2d 811 (1957), the Supreme Court applied res ipsa loquitur to a break in the city's water main. The trial court in that case, however, had made a specific finding that a broken water main does not normally occur absent negligence. *See also Clark v. Icicle Irrig. Dist.,* 72 Wn.2d 201, 432 P.2d 541 (1967) (break in wall of irrigation canal). Application of the doctrine to the storm sewer system in the instant case is distinguishable.

Although the trial court found that flooding occurred at times when little or no rain had fallen, the storm that caused the only damage for which plaintiffs sought compensation, the storm of October 5 and 6, 1981, was a "75-year" storm. As the trial court noted, any of the alternatives to the present system that it had considered would probably not have prevented the flooding on that occasion. Clearly, flooding can arise for reasons unrelated to negligence. Moreover, unlike the water main and irrigation canal in *Kind* and *Clark,* the drainage system in the instant case was not within the exclusive control of the County.

Courts in other jurisdictions have split on the question of whether the exclusivity requirement of res ipsa loquitur is

ever applicable to a sewer pipe. Some courts have found that because sewer systems, unlike water mains, are open to the public through grates, the doctrine is inapplicable. *See, e.g., Freitag v. Montello,* 36 Wis. 2d 409, 153 N.W.2d 505, 509 n.9 (1967); *Reich v. Salt Lake City Suburban Sanitary Dist. 1,* 29 Utah 2d 125, 506 P.2d 53 (1973). A few courts have applied the doctrine in obstruction–caused sewage backup cases. *See, e.g., Cummins v. West Linn,* 21 Or. App. 643, 536 P.2d 455 (1975). We find the doctrine is inapposite in the instant case.

No finding suggests that King County had any control, much less exclusive control, over the private drainage system that was located downstream of appellants' property and that contained the "bottleneck" causing the flooding. In its memorandum opinion, the trial court remarked that no evidence had been presented regarding whether the County had any rights at all to this portion of the system. Indeed, the court implied that the County had no legal right or duty to maintain this pipe. Memorandum opinion, at 5. As the court observed in *New Smyrna Beach Utils. Comm'n v. McWhorter,* 418 So. 2d 261, 264 (Fla. 1982):[5]

> Any number of inappropriate objects may be, and are, forced into a public sewer system at any given time with potentially catastrophic results. . . . In fact, it is this very public access to the sewer line which defeats the requisite degree of control and renders the doctrine of res ipsa loquitur inapplicable to a case such as this where an obstruction, not caused by a defect in the design or construction of the system itself, products an injury–causing sewer back–up.

Because the doctrine of res ipsa loquitur is not satisfied, no presumption of negligence can be maintained, and the trial court erroneously shifted the burden to the County to show that the flooding was not the result of its failure to exercise due care.

---

[5]Both sides in this dispute have cited the decision in *McWhorter v. New Smyrna Beach Utils. Comm'n,* 400 So. 2d 23 (Fla. Dist. Ct. App. 1981), an opinion that was quashed upon appeal.

In summary, appellants have failed to establish a proper basis for imposing liability upon the County for damages caused by the flooding of the drainage system. *See Nejin v. Seattle,* 40 Wn. App. 414, 422, 698 P.2d 615 (1985). The findings and evidence do not support the trial court's conclusion that the flooding constituted trespass by the County. A presumption of negligence is not supported by the doctrine of res ipsa loquitur. Because the appellants have failed to sustain their burden of establishing a basis for liability, we do not address the other issues involving damages that have been raised by the parties.

The trial court's judgment is reversed, and the cause remanded for the entry of an order of dismissal in favor of King County.

SCHOLFIELD, C.J., and COLEMAN, J., concur.

Reconsideration denied April 24, 1986.

Review denied by Supreme Court July 8, 1986.