# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| LUCAS JAMES SNYDER, a single man, | No.  51429-0-II |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| DAVID  ANTHONY  GRISWOLD,  a  single man; LEO BUBLITZ and SUSAN BUBLITZ, husband and wife, | |
| Respondents. | |

GLASGOW, J. — Lucas James Snyder appeals from an order granting summary judgment to his neighbors, Leo and Susan Bublitz, on their claim of water trespass.  They claimed that Snyder's improvements to his drainage system had increased and concentrated the flow of water onto their property, causing flooding and erosion.  The order included an injunction compelling Snyder to completely abate the flow of water from the drainage system onto the Bublitzes' property, as may be permitted by state and local authorities.

Snyder argues that the trial court erred in granting summary judgment because there remains a genuine issue of material fact as to whether his actions caused an increase or change from the water's natural flow.  He also contends that the court erred in issuing an injunction because the Bublitzes did not adequately show an actual and substantial injury.

We affirm.

FACTS

Snyder and the Bublitzes own adjacent lots in Jefferson County, Washington. Snyder's property (Lot 67) is uphill from the Bublitzes' property (Lots 64, 65, and 66); uphill from Snyder is property belonging to Pope Resources, a logging company.

Snyder sued the Bublitzes to reform view easements he had over the Bublitzes' property, contending that the descriptions of the view easement corridor recorded by the previous owner, David Griswold, were incorrect. The Bublitzes brought counterclaims for trespass, nuisance, and negligence, alleging that Snyder had made modifications to his drainage system that channeled surface water runoff onto the Bublitzes' property, resulting in periodic flooding and harm to that property. The Bublitzes sought an injunction to compel Snyder to permanently abate the flow of water runoff from Snyder's property onto the Bublitzes' property.

The Bublitzes moved for summary judgment on all claims. In support of the motion, with respect to his water runoff counterclaim, Leo Bublitz[1] submitted a declaration asserting, in relevant part, that Snyder had "installed a french drain to collect rain and surface water, and routed the 10" diameter outlet pipe for the new drainage system such that the outflow from the drainage system runs over Lot 66 of [the Bublitzes'] property." Clerk's Papers (CP) at 63. Leo's declaration went on to contend that this construction "caused a radical increase in the amount, and concentration of, water flowing, off of Mr. Snyder's property [and] onto [the Bublitzes'] property." CP at 63. Leo alleged that previously the natural drainage of rain water from Snyder's property was "diffuse and spread out over the entire area of the gradient of the land," but after the installation of the new drain, the water became "concentrated and, during rain

_____

[1] We refer to Leo Bublitz by his first name for clarity.

storms, flows out of the outflow of his drainage pipe over our property like a small creek." CP at 63. Leo claimed that the outflow caused periodic flooding and erosion of his property, which would continue unless Snyder modified his drainage system.

In support of his declaration, Leo also submitted photographs depicting the channel of water flowing down from Snyder's property across the Bublitzes' property and showing Leo standing in accumulated water in a flooded portion of his property.

In his response to the Bublitzes' motion for summary judgment, Snyder argued that he had simply replaced a damaged and plugged system that had been installed by the previous owner. According to Snyder, any runoff from his property onto the Bublitzes' merely followed the natural gradient of the land, and Snyder's actions had not resulted in any increased water runoff. Snyder asserted that any flooding likely resulted from the installation of a road and dam on the Bublitzes' property that blocked a natural stream that had previously carried the water downhill.

In support of these assertions, Snyder presented only his own declaration and survey maps of the layout of the Pope Resources land in relation to his and the Bublitzes' properties. In his declaration, Snyder contended that "[i]t appears" that unpermitted dams on the Bublitzes' property inhibit the natural flow of the stream that comes down from the Pope Resources property. CP at 88. According to Snyder, "[i]t appears" that a small stream had previously flowed from the Pope Resources property across the back side of Snyder's lot and down into the ravine to join the stream that Snyder contended was blocked by the dams on the Bublitzes' property. CP at 88. "It appears that it is the installation of that road that is causing the flooding." CP at 88. The maps attached to Snyder's declaration showed a stream flowing off of the Pope

Resources property and onto Snyder's and the Bublitzes' properties, but did not show any detail as to what construction, if any, was present on the Bublitzes' property.

Snyder also asserted in his declaration that he had not installed a new system, but rather in the course of building a new shop he replaced an existing culvert that was plugged and installed catch basins in the ditch running along the boundary between his property and the Pope Resources property. Snyder asserted that the water running off of the Pope Resources land was "natural flow" and that he had not "channeled additional water" onto the Bublitzes' property. CP at 89.

Leo then submitted a supplemental declaration reiterating his assertions that Snyder's installation of a new drainage system caused a channelized flow of water across his land. Leo attached to this declaration the site plans for Snyder's house and shop approved by Jefferson County, which he contended did not show the culvert or ditch described in Snyder's declaration. These features did not appear to be labeled or otherwise indicated in the plans.

The court granted summary judgment in favor of the Bublitzes on all issues. In its order, the court made findings, including that Snyder installed a new drainage system, the outflow from which periodically "results in a concentrated, channelized cascade of water several inches deep running over, and eroding, the Bublitz[es'] property." CP at 125. The court ordered Snyder "to modify the drainage system installed on Lot 67 to completely abate the flow of any water" from Snyder's drainage system onto the Bublitzes' property, "by such means as may be permitted by any state or local authorities." CP at 126.

In an accompanying memorandum opinion, the court stated that it "adopt[ed] as pertinent facts" those set forth by the Bublitzes. CP at 127. The court further explained that Snyder had

"fail[ed] to set forth facts based upon personal knowledge or adequate foundation to create issues of material fact for purposes of these motions." CP at 127. Snyder's "actions increased and centralized the flow of water onto [the Bublitzes'] property as set forth above and depicted by the photographs filed by [Leo]. . . . The water as redirected by [Snyder] is clearly damaging [Bublitzes'] property and will continue to do so." CP at 129.

Snyder moved for reconsideration, and attached a letter from the Washington Department of Natural Resources and a photograph of the drainage flow from his property onto the Bublitzes' property. Neither the letter nor the photograph were previously before the trial court. The letter, addressed to Snyder, summarized the Department's conclusions following a site visit to his property and read in relevant part:

> This natural drainage has been altered both on your property and on the Bublitz property. On your property it has been altered by the ditch behind your shop and along your driveway. However the ditch then routes storm water back to the natural topographic drainage. . . .
> . . . .
> The alterations to the natural drainage on both properties have no effect on the amount of water being transported through the drainage.

CP at 138. The letter then concludes that despite those alterations, "storm water is more or less being kept in the natural topographic low pathway." CP at 138. The Department then recommended that Snyder not try to reroute the storm water elsewhere, as the "issue with the storm water appears to be created by undersized culverts installed within the natural drainage, in particular on the Bublitz[es'] property." CP at 138.

In his response to Snyder's motion, the Bublitzes argued that Snyder had not identified an appropriate ground for reconsideration under CR 59 or established that the unsworn letter from

the Department was admissible. The trial court denied the motion "[f]or all the reasons set forth in Defendant Bublitz's response." CP at 153.

Snyder appeals.

## ANALYSIS

### I. SUMMARY JUDGMENT

Snyder argues the trial court erred in granting summary judgment because, he contends, there existed a genuine issue of material fact as to whether he caused an unnatural and harmful discharge of surface water onto the Bublitzes' property. We disagree.

### A. Summary Judgment Burden and Standard of Review

In reviewing a grant of summary judgment, we apply the same standard as the trial court: summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *DeVeny v. Hadaller*, 139 Wn. App. 605, 616, 161 P.3d 1059 (2007). We consider the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 864, 324 P.3d 763 (2014). We review summary judgment de novo. *State v. Grocery Mfrs. Ass'n*, 5 Wn. App. 2d 169, 185, 425 P.3d 927 (2018), *review granted*, 193 Wn.2d 1001 (2019).

The moving party bears the burden of first showing that there is no genuine issue of material fact. *Id.* Once the moving party has made such a showing, the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and show a genuine issue of material fact. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178,

183, 401 P.3d 468 (2017). Responses by an adverse party to a motion for summary judgment

must be made on personal knowledge, must set forth facts that would be admissible in evidence,

and must show affirmatively that the declarant of such facts is competent to testify to the matters

stated therein. *Lane v. Harborview Med. Ctr.*, 154 Wn. App. 279, 286, 227 P.3d 297 (2010).

A genuine issue of material fact exists if the evidence would be sufficient for a

reasonable jury to find in favor of the nonmoving party. *Zonnebloem*, 200 Wn. App. at 182-83.

But where reasonable minds could reach only one conclusion from the admissible facts in

evidence, that issue may be determined on summary judgment. *Sutton*, 180 Wn. App. at 865.

At the outset, Snyder argues the court erred in making findings of fact in its grant of

summary judgment. But the trial court may list undisputed facts in a summary judgment order,

even if factual findings are redundant for the purposes of summary judgment. Moreover,

findings of fact and conclusions of law are typically necessary to support a permanent injunction.

B.      Common Enemy Doctrine

        1.  The common enemy doctrine and its exception

Snyder argues the water flowing from his property onto the Bublitzes' property falls

under the "common enemy doctrine," and so he should not be held responsible for preventing

any damage to the Bublitzes' property caused by the water runoff. We disagree.

Under the common enemy doctrine, a landowner may dispose of unwanted surface water

without incurring liability for injury caused to adjacent land. *Currens v. Sleek*, 138 Wn.2d 858,

861, 983 P.2d 626 (1999). However, surface waters cannot be artificially collected and

discharged upon adjoining lands in amounts greater than or in a manner different from its natural

flow. *Id.* at 862. This exception to the doctrine prohibits a landowner from creating an unnatural

conduit but allows them to direct diffuse surface waters into pre-existing natural waterways and drainways. *Id*. While Snyder, at times, seems to focus on whether his actions increased the *amount* of water flowing across the Bublitzes' property, surface water also cannot be artificially collected or discharged in a *manner* different from its natural flow under the common enemy doctrine. *Id*.

    2.  Evidence presented upon reconsideration

As an initial matter, Snyder relies on two pieces of evidence that he presented with his motion for reconsideration and that he claims to establish a genuine issue of material fact as to whether his modifications to his drainage system increased or channelized the water runoff from his property onto the Bublitzes' property in a way that caused harm to the Bublitzes.

We consider only the evidence that was brought to the trial court's attention. *Keck v. Collins*, 181 Wn. App. 67, 79, 325 P.3d 306 (2014); RAP 9.12. While a party may submit additional evidence to support reconsideration after summary judgment has been rendered but before a formal judgment has been entered, the trial court may decline to consider it. *Meridian Minerals Co. v. King County*, 61 Wn. App. 195, 202-03, 810 P.2d 31 (1991). Unless the evidence is newly discovered, "the parties should generally not be given another chance to submit additional evidence." *Id.* at 203.

First, Snyder points to a photograph that he claims shows there is no erosion on the Bublitzes' property. Second, Snyder points to an unsworn letter from the Department of Natural Resources summarizing its observations from a site visit to his property as evidence that he did not change the natural flow of the surface water passing through his property. But neither of these pieces of evidence was before the trial court at summary judgment, and the court declined

to consider them with Snyder's motion for reconsideration, as it had the discretion to do. Because we only review the evidence that was before the trial court on summary judgment, we too decline to consider them.  RAP 9.12.

    3.  Snyder's remaining evidence was insufficient to defeat summary judgment

Snyder contends the trial court erred in applying the common enemy exception because the Bublitzes did not show that Snyder collected and discharged a greater amount of surface water than flowed onto the Bublitzes' property before the new drain.  Snyder insists that historically there was a stream running through his property and onto the Bublitzes' property and that he has not channeled "additional water" onto the Bublitzes' property.  CP at 89.  Even so, Snyder did not dispute that his changes to the culvert and drainage system changed the *manner* in which water flowed onto the Bublitzes' property.

Leo's declarations alleged that Snyder's new drainage system caused water to flow in a concentrated channel "like a small creek" onto his property, causing erosion and periodic flooding.  CP at 63-64.  According to Leo, prior to the installation of the new drainage system the natural drainage of rain water from Snyder's property had been "diffuse and spread out over the entire area of the gradient of the land."  CP at 63.  Leo attached photographs showing the drainage channel coming from Snyder's property and of himself standing in a flooded area. These photos support the Bublitzes' contentions and Snyder's evidence does not dispute that his actions changed the flow of water onto the Bublitzes' property.

Snyder also contends that he only repaired an existing drainage system, and passive usage of a pre-existing system is not an intentional trespass, citing *Hughes v. King County*, 42 Wn. App. 776, 714 P.2d 316 (1986).  But in that case, the court concluded that the defendant had not

"in any way materially altered the flow of water through the drainage system" in that case. *Hughes*, 42 Wn. App. at 780. Again, there is no dispute that Snyder's repairs altered the flow of water. To the extent that Snyder claims that he merely directed diffuse surface waters into pre-existing natural waterways and drainways, and that features on the Bublitzes' property are responsible for the flooding, that argument fails. To support these conclusions, Snyder relied only on his own assertions, unsupported by personal knowledge. A party's declaration on its own may be sufficient to create a question of fact where it is based on personal knowledge because at the summary judgment stage, we must treat a submission from the nonmoving party as true even if it is self-serving. *Sutton*, 180 Wn. App. at 866. But here, Snyder has not established that the contentions in his declaration regarding the historic flow of water or the impact of a roadway on the Bublitzes' property are based on personal knowledge. Rather, his declaration stated:

> *It appears* that in the past a smaller stream from Pope land also flowed across the back side of my lot and down into the ravine to join the st[r]eam that is dammed up on the Bublitz[es'] lots. *It appears* that a roadway was installed on the Bublitz[es'] lot which now diverts the small stream that flowed off my lot and on to the Bublitz[es'] lots. *It appears* that it is the installation of that road that is causing the flooding.

CP at 88 (emphasis added). None of these contentions are based on Snyder's personal knowledge, or set forth facts that would be admissible in evidence, or show that Snyder would be competent to testify to them. *See Lane*, 154 Wn. App. at 286. As such, they are insufficient to create a genuine issue of fact.

The trial court did not err in granting summary judgment.

II. INJUNCTION

Snyder argues the court erred in issuing an injunction requiring him to "completely abate the flow of any water from [his] drainage system onto [the Bublitzes'] property by such means as may be permitted by any state or local authorities." Br. of Appellant at 35-37; CP at 126. We disagree.

A.    Burden to Obtain Injunctive Relief and Standard of Review

The party seeking an injunction must show that (1) they have a clear legal or equitable right, (2) they have a well-grounded fear of immediate invasion of that right, and (3) the acts complained of are either resulting in or will result in actual and substantial injury. *SEIU Healthcare 775NW v. Dep't of Soc. & Health Servs.*, 193 Wn. App. 377, 393, 377 P.3d 214 (2016). The burden is on the party requesting injunctive relief to satisfy all three elements. *Federal Way Family Physicians, Inc. v. Tacoma Stands Up for Life*, 106 Wn.2d 261, 265, 721 P.2d 946 (1986).

"Injunctive relief is not warranted 'where there is a plain, complete, speedy and adequate remedy at law.'" *Bellevue Square, LLC v. Whole Foods Market Pac. NW, Inc.*, 6 Wn. App. 2d 709, 716, 432 P.3d 426 (2018) (quoting *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 791, 638 P.2d 1213 (1982)). Other remedies may be inadequate where the injury by its nature cannot be compensated by money damages, the damages cannot be ascertained with any degree of certainty, or other remedies would not be efficient because the injury is of a continuing nature. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 210, 995 P.2d 63 (2000).

We review a trial court's decision to grant an injunction for abuse of discretion. *Bauman v. Turpen*, 139 Wn. App. 78, 93, 160 P.3d 1050 (2007). A trial court abuses its discretion if its

11

ruling is manifestly unreasonable or it exercises discretion on untenable grounds or for untenable reasons. *Id.* A decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard, or if the facts do not meet the requirements of the correct standard. *Id.* When a trial court orders injunctive relief, there is no abuse of discretion unless no reasonable judge would take the position adopted by the trial court. *Id.*

B.      The Trial Court Did Not Abuse Its Discretion

Snyder argues that the Bublitzes cannot show actual and substantial injury warranting an injunction because the Bublitzes did not present clear evidence of erosion or other damage to their property. We disagree.

Leo's declarations alleged that Snyder's new drainage system caused water to flow in a concentrated channel "like a small creek" onto his property, causing erosion and periodic flooding. CP at 63-64. According to Leo, prior to the installation of the new drainage system the natural drainage of rain water from Snyder's property had been "diffuse and spread out over the entire area of the gradient of the land." CP at 63. Leo attached photographs showing the drainage "creek" running from Snyder's property onto his own and of himself standing in a flooded area. CP at 77-79. These photos support Leo's contentions in his declaration that Snyder's upgrades to his drainage system have channelized the water flow onto the Bublitzes' property.

While Snyder asserts that there is no evidence of the conditions in that area before the new drain was installed to compare against, he ignores Leo's statement to that effect in his declaration, which was based on Leo's personal knowledge. In contrast, Snyder fails to offer any

contrary evidence based on his own personal knowledge. Snyder refers to the letter from the Department stating that it "did not witness any obvious damage from storm water to either your [Snyder] property or the Bublitz[es'] property." Br. of Appellant at 35. But as discussed above, that letter was not presented to the trial court at the summary judgment stage, it was not a sworn statement, and the trial court exercised its discretion not to consider it. And Leo submitted evidence in the form of photographs to establish actual and substantial injury.

Given the inadequacy of other remedies, it was within the trial court's discretion to issue an injunction. Frequent flooding of property by its nature is difficult to compensate with money damages, such damages would be difficult to calculate, and the injury is clearly of a continuing nature. *See Kucera*, 140 Wn.2d at 210. "'When surface water is collected and discharged upon adjoining lands in quantities greater than, or in a manner different from, the natural flow . . . [i]njunction is held to be a proper remedy.'" *Hedlund v. White*, 67 Wn. App. 409, 418, 836 P.2d 250 (1992) (quoting *Holloway v. Geck*, 92 Wash. 153, 157, 158 P. 989 (1916)).

Snyder argues that this injunction is difficult to comply with because the true source of the runoff is the Pope property uphill from him, and courts should consider the relative hardship to the parties when considering injunctive relief. But we have clarified that although a trial court should consider factors such as relative hardship, "they are not essential elements of an action for injunctive relief; the essential elements are necessity and irreparable injury." *DeLong v. Parmelee*, 157 Wn. App. 119, 150, 236 P.3d 936 (2010). And we note that the injunction only requires Snyder to take action "as may be permitted by any state or local authorities." CP at 126.

No. 51429-0-II

The Bublitzes submitted evidence of the harms to their property and the necessity of an injunction to rectify those harms. We hold the court did not abuse its discretion in granting an injunction.

### III. ATTORNEY FEES

Snyder argues that, if we reverse the trial court's grant of an injunction, he is entitled to attorney fees, but the trial court did not abuse its discretion in issuing the injunction. The Bublitzes argue that they are entitled to attorney fees because Snyder's appeal is frivolous, but we disagree. RAP 18.9(a). We conclude that neither party is entitled to attorney fees on appeal.

In sum, we affirm the trial court and deny attorney fees to either party on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Glasgow, J.

We concur:

_____
Worswick, P.J.

_____
Cruser, J.

14